UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LARICIA AKUM UFERK,

Petitioner,

v.

DANIEL BRIGHTMAN, Field Office Director of Enforcement and Removal Operations, San Diego Field Office, Immigration and Customs Enforcement, et al.,

Respondents.

Case No.:  3:26-cv-02354-RBM-DDL

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Laricia Akum Uferk's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241.  (Doc. 1.)  For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

**A.    Factual Background**

Petitioner, a citizen of Cameroon, entered the United States on September 23, 2025.  (Doc. 4 at 2 (citing Doc. 4-1 at 2, 7).)  She was immediately apprehended by Customs and Border Protection, determined to be inadmissible under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), and taken into Immigration and Customs Enforcement ("ICE") custody pursuant to 8 U.S.C. § 1225(b).  (*Id.*)  After receiving a positive credible fear determination by an asylum officer, Petitioner was issued a Notice to Appear, which

1

initiated full removal proceedings against her.  (*Id.*)

During her removal proceedings, Petitioner filed applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  (*Id.*) The Department of Homeland Security ("DHS") filed a motion to pretermit Petitioner's applications for relief due to an asylum cooperation agreement with Uganda.  (*Id.* (citing Doc. 4-2 at 4–6).)  On February 13, 2026, the immigration judge granted DHS's motion to pretermit, denied Petitioner's applications for relief, and ordered Petitioner removed to Uganda.  (Doc. 4-2 at 7.)  On February 20, 2026, Petitioner filed an appeal of the immigration judge's decision to the Board of Immigration Appeals ("BIA").  (Doc. 4 at 2 (citing Doc. 4-3 at 2).)  Petitioner's BIA appeal remains pending.  (*Id.*)

Petitioner filed her Petition on April 13, 2026.  (Doc. 1.)  The Court set a briefing schedule shortly thereafter.  (Doc. 2.)  Respondents filed their Return to Petition for Writ of Habeas Corpus ("Response") on April 21, 2026.  (Doc. 4.)  Petitioner filed her Traverse in Support of Petition for Writ of Habeas Corpus on April 28, 2026.  (Doc. 5.)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.   DISCUSSION

The Parties agree that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b).  (Doc. 1 ¶ 2; Doc. 4 at 5.)  Accordingly, the issue before the Court is whether, under the circumstances of this case, applying the mandatory detention provisions of

2

3:26-cv-02354-RBM-DDL

§ 1225(b) violates Petitioner's due process rights.  Petitioner argues that, even though she is mandatorily detained, such detention violates the Due Process Clause when it becomes unreasonably prolonged.  (Doc. 1 ¶¶ 29–35.)  Respondents argue that Petitioner's detention is mandated by § 1225(b) until the conclusion of the removal proceedings, and that "[e]ven if the Court infers a constitutional right against prolonged mandatory detention, Petitioner's claim still fails."   (Doc. 4 at 6, 9–11.)[1]   The Court agrees with Petitioner that an unreasonably prolonged detention without a bond hearing violates due process, and that Petitioner's detention has become unreasonably prolonged.

**A.    Due Process**

Respondents argue that "inadmissible arriving noncitizens seeking initial entry into the United States . . . have no due process rights 'other than those afforded by statute.'" (Doc. 4 at 7 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).)

"Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b)(1)."  *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025); *see Mendoza-Linares v. Garland*, Case No.: 21-cv-1169-BEN (AHG), 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) ("Petitioner has no Fifth Amendment right to a bond hearing pending his removal proceedings."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (same); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021) (same).

---

[1]   Respondents also argue that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g).  (Doc. 4 at 5–6.)  The Court has consistently rejected this argument, *see Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161–62 (S.D. Cal. 2025), and does so again here for the same reasons.  Petitioner challenges her detention as unreasonably prolonged under the Fifth Amendment.  She is thus enforcing her "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order."  *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (emphasis in original).

3:26-cv-02354-RBM-DDL

"Most courts have ruled otherwise." *Gao*, 805 F. Supp. 3d at 1110 (collecting cases); *accord Abdul-Samed v. Warden of Golden State Annex Det. Facility*, Case No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for citizens detained under 8 U.S.C. § 1225(b), . . . essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."). The Court thus "joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020).

**B.    Prolonged Detention**

To determine whether detention has become unconstitutionally prolonged under § 1225(b), the Court applies the six-factor balancing test set forth in *Kydyrali*. *See* 499 F. Supp. 3d at 773. Under this test, the Court considers:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Gao*, 805 F. Supp. 3d at 1111.

As to the first factor, which has been described as "the most important," *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), Petitioner has been detained for over seven months. (*See* Doc. 4 at 2.) Respondents argue that "Petitioner's detention falls significantly short of the length courts have found to raise due process concerns." (Doc. 4 at 9.) As another court in this District noted, though, "[c]ourts have found detention

4

over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Abdul Kadir v. Larose*, Case No.: 25cv1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (collecting cases). The Court finds that this factor favors Petitioner.

As to the second factor, the Court finds that the "undetermined, but likely significant, period of mandatory detention through the appeals process" weighs in favor of Petitioner. *Gao*, 805 F. Supp. 3d at 1111; *accord Abdul Kadir*, 2025 WL 2932654, at *5; *Masood v. Barr*, Case No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("The BIA appeal . . . [is a] perfectly legitimate proceeding[] he is legally entitled to pursue," and the respondents "cannot predict with any degree of confidence when the BIA appeal will be resolved," which "could lead to further proceedings that might take up many more months, or even years."). Additionally, "the Asylum Cooperative Agreements under which Petitioner's asylum application was pretermitted is currently being challenged in ongoing federal litigation," which may also prolong Petitioner's detention. (Doc. 5 at 5–6 (citing *U.T. v. Barr*, Case No. 1:20-cv-00116-EGS (D.D.C.).)

As to the third factor, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Although the Parties did not brief this factor, "[c]ourts have recognized that the conditions in local detention centers are 'indistinguishable from penal confinement.'" *Popov v. Warden*, Case No.: 26-cv-1174-JES-BLM, 2026 WL 936952, at *4 (S.D. Cal. Apr. 7, 2026) (discussing a petitioner detained at Imperial Regional Detention Facility) (quoting *Kydyrali*, 499 F. Supp. 3d at 773). Therefore, this factor weighs in Petitioner's favor.

The fourth and fifth factors are neutral because nothing in the record suggests either Party has caused delays in the removal proceedings. As to the sixth factor, Petitioner's applications for asylum, withholding of removal, and CAT relief were all previously denied. (Doc. 4-2 at 7.) This makes it more likely that the removal proceedings will result in a final order of removal. *Cf. Abdul Kadir*, 2025 WL 2932654, at *5 (finding that the petitioner's grant of asylum was a strong indication that he would not receive a final order

3:26-cv-02354-RBM-DDL

of removal).  This weighs against Petitioner.

Three factors, including "the most important one," weigh in Petitioner's favor, and only one weighs against her.  Therefore, the Court finds that Petitioner's detention under § 1225(b) has become unreasonably prolonged and that due process requires that she be provided with a bond hearing.

## IV.   CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**.  Respondents are **ORDERED** to arrange an individualized bond hearing for Petitioner before an immigration judge within **fourteen (14) days** of entry of this Order to determine whether her continued detention is warranted.  Respondents shall bear the burden of establishing, by clear and convincing evidence,[2] that Petitioner poses a danger to the community or a risk of flight.  If no hearing occurs **within fourteen (14) days** of entry of this Order, Petitioner shall be released from Respondents' custody.  On or before **May 22, 2026**, Respondents **SHALL FILE** a status report indicating whether and when Petitioner received a bond hearing, and the outcome of that bond hearing.

**IT IS SO ORDERED.**

DATE:  April 29, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1095 (S.D. Cal. 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").

3:26-cv-02354-RBM-DDL